UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

PAUL KENNETH KUSAK,

                         Plaintiff,

                                                                    Case # 11-CV-6557-FPG

v.

                                                                     DECISION AND ORDER

DEPUTY KLEIN,
LIEUTENANT SCHROTH, and
DEPUTY DYJAK,

                         Defendants.
_____

## INTRODUCTION

*Pro se* Plaintiff Paul Kenneth Kusak brings this action against three employees of the Monroe County Sheriff's Office: Deputy Klein, Lieutenant Schroth, and Deputy Dyjak. The Complaint centers around an incident that occurred on July 29, 2011, and resulted in the Plaintiff being taken into custody under the provisions of the New York Mental Hygiene Law. Plaintiff's Complaint is difficult to parse, but read generously, it alleges causes of action against the Defendants for false arrest and false imprisonment, illegal search and seizure, failure to give *Miranda* warnings, and slander. The Defendants have moved for summary judgment, and the Plaintiff has filed numerous letters in response. For the following reasons, the Defendants' Motion is granted, and this case is dismissed with prejudice.

## DISCUSSION

I.     <u>Summary Judgment Standard</u>

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he mere existence of *some* allegedly factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the

requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). While the court must view the inferences to be drawn from the facts in the light most favorable to the party opposing the motion, *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), a party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986). The non-moving party may defeat the summary judgment motion by producing sufficient specific facts to establish that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). However, "mere conclusory allegations or denials" are not evidence and cannot by themselves create a genuine issue of material fact where none would otherwise exist. *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir. 1980).

Because the Plaintiff is proceeding *pro se*, his submissions are read liberally and interpreted "to raise the strongest arguments that they suggest." *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009). Nevertheless, proceeding *pro se* does not relieve a litigant from the usual requirements of summary judgment. *See Wolfson v. Bruno*, 844 F. Supp. 2d 348, 354 (S.D.N.Y. 2011). When a *pro se* plaintiff fails to oppose a motion for summary judgment after having been warned of the consequences of such a failure, "summary judgment may be granted as long as the Court is satisfied that the undisputed facts 'show that the moving party is entitled to judgment as a matter of law.'" *Almonte v. Pub. Storage Inc.*, No. 11 CIV. 1404 DLC, 2011 WL 3902997, at *2 (S.D.N.Y. Sept. 2, 2011) (quoting *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996)).

Because *pro se* litigants are generally unfamiliar with the procedural requirements of summary judgment motions, they are provided with a specific notification at the time the motion is filed. *See Irby v. New York City Transit Auth.*, 262 F.3d 412, 414 (2d Cir. 2001); *see also* Local Civ. R. 56(b). Here, the record reflects that the Plaintiff was served with the required

notice that informed Plaintiff of his obligation to respond, his burden of producing evidence in opposition, and that his opponent's factual statements may be accepted as true if he failed to respond.

Despite that clear warning, the Plaintiff failed to appropriately respond to the Defendants' Motion for Summary Judgment. Instead, he sent numerous rambling letters to the Court which have nothing to do with this case and are largely comprised of irrelevant statements such as "World Wide child molestation stops here with this landmark victory over VZW/USPS leaders flexing their might, filthy influence and there (sic) perversion thinking from these communication companies." Dkt. # 57. Of course, this case has absolutely nothing to do with Verizon Wireless or the U.S. Postal Service, but the Plaintiff spills much ink throughout his incoherent letters regarding these (and other) entities. As just a small sampling of other dubious statements made by the Plaintiff, his letters claim that he is the "sole owner of Verizon Wireless," Dkt. #57, that "Eileen Collins who was the best female pilot to command the Space Shuttle Discovery endorses this Endeavour," *Id.*, and that he has "Judicial Immunity with Chief Justice Roberts and now with Chief Justice of Western, NY William M. Skretny." Dkt. # 69. The only potentially relevant sentences out of the multitude of letters sent by the Plaintiff are comprised of only short, conclusory statements, such as "this is all lies," Dkt. # 63, that are wholly insufficient to withstand a motion for summary judgment.

    II.    <u>The Material Facts Are Undisputed</u>

As previously alluded to, Fed. R. Civ. P. 56(e)(2) provides that if a party "fails to properly address another party's assertion of fact…the court may…consider the fact undisputed for purposes of the motion." The same rule is contained in Local Rule of Civil Procedure 56(a)(2), which provides that:

> The papers opposing a motion for summary judgment shall include a response to each numbered paragraph in the moving party's statement, in correspondingly numbered paragraphs and, if necessary, additional paragraphs containing a short and concise statement of additional material facts as to which it is contended there exists a genuine issue to be tried. Each numbered paragraph in the moving party's statement of material facts will be deemed admitted for purposes of the motion unless it is specifically controverted by a correspondingly numbered paragraph in the opposing statement.

Because the Plaintiff has failed to file a statement of material facts addressing Defendant's statement of material facts, the Court considers the facts alleged by Defendants – which are supported by citations to evidence in admissible form – to be undisputed, in accordance with these rules. *See Gubitosi v. Kapica*, 154 F.3d 30, 31 n.1 (2d Cir. 1998). Accordingly, I adopt the Defendants' Statement of Material Facts Not in Dispute (Dkt. # 53-11), and those undisputed facts establish the following:

> 1. On July 29, 2011, Norman Klein (Deputy Klein) was employed by the Monroe County Sheriff as a Monroe County Deputy Sheriff assigned to his Road Patrol Division, Zone B.
>
> 2. On July 29, 2011, Brian Dyjak (Deputy Dyjak) was employed by the Monroe County Sheriff as a Monroe County Deputy Sheriff.
>
> 3. Prior to Kusak's arrest, Deputy Klein received training regarding enforcement of the Mental Hygiene Law, and mental health issues in general.
>
> 4. Prior to Kusak's arrest, Deputy Dyjak received training regarding enforcement of the Mental Hygiene Law, and mental health issues in general.

5. On July 29, 2011, Lt. Schroth was employed by the Monroe County Sheriff as a Monroe County Deputy Sheriff, Lieutenant assigned to Zone B.

6. Lt. Schroth was not one of the Monroe County Sheriff Deputies dispatched to respond to the 911 call on July 29, 2011.

7. On July 29, 2011, shortly after 10:00 p.m., Deputy Klein took plaintiff Paul Kusak ("Kusak") into custody at his home at 88 Covered Wagon Trail, in the Town of Henrietta, New York, without a warrant, and pursuant to New York State Mental Hygiene Law (MHL) §9.41.

8. On July 29, 2011, Stephen Smith ("Smith") and Kusak engaged in a verbal altercation.

9. Smith is the neighbor of Kusak.

10. A 911 call was placed which reported neighbor troubles.

11. At approximately 10:00 p.m., Deputy Klein and Deputy Dyjak were dispatched by the Office of Emergency Communications (OEC), to respond to 88 Covered Wagon Trail, Henrietta, New York for complaints of neighbor troubles.

12. Lt. Schroth was not dispatched to the same location, nor at any point was he involved in the Mental Hygiene arrest of Kusak.

13. Upon the Deputies' arrival, they engaged in conversation with Kusak.

14. Kusak displayed paranoid tendencies and bizarre behavior.

15. Kusak also made statements about poisoning Smith's children with cyanide.

16. Additionally, Kusak stated that he is a veteran and upon being asked, admitted to possessing a shotgun.

17. Kusak escorted Deputy Dyjak to his bedroom to show him the shotgun, which was voluntarily surrendered and taken into custody.

18. Thereafter, Deputy Klein made the determination to take Kusak into custody pursuant to MHL§ 9.41, based upon Kusak's bizarre behavior and the potential risk to the next-door children.

19. Deputy Klein then took Kusak into custody at 88 Covered Wagon Trail, Henrietta, New York on July 29, 2011, shortly after 10:00 p.m., without a warrant.

20. Deputy Klein did not selectively enforce MHL §9.41 against Kusak.

21. Upon detaining Kusak, Deputy Klein transported him to Strong Memorial Hospital without incident for a Mental Health Evaluation.

22. In relation to the mental hygiene detention of Kusak, Deputy Klein drafted a written report.

23. Kusak was held by Strong Memorial Hospital for four days.

24.     Kusak was diagnosed with psychosis upon his discharge from Strong.

25.     After Kusak's discharge, he made a visit to the Zone B substation, and was asked to leave because he was yelling obscenities and refused to calm down.

26.     In January of 2013, IA received a letter from Kusak, which contained various allegations involving the incident on July 29, 2011.

27.     IA obtained and reviewed records and information relating to Kusak's allegations.

28.     One of the documents reviewed by IA was Deputy Klein's written report prepared, which documented that Deputy Klein found Kusak to be a danger to himself or others, and that Kusak had made verbal threats with weapons. The report also noted that several other indicators of a mentally disturbed person were observed and detected by Deputy Klein.

29.     IA also conducted a criminal records check on Kusak, which found that Kusak had several other police encounters.

30.     The field interview forms completed by three different agencies documented officer safety concerns with Kusak and referenced a 25 page letter that Kusak wrote to the Greece Police Department, which was filled with various accusations. Additionally, one of the Incident Reports, documented unusual behavior exhibited by Kusak and indicated a mental health history.

31. Based upon IA's review and findings, no further action was taken.

With the underlying facts determined, I turn now to the causes of action alleged by the Plaintiff.

III. Deputy Dyjak and Lieutenant Schroth

Although the Plaintiff has named three individuals in his lawsuit, his Complaint makes no allegations at all against Deputy Dyjak or Lieutenant Schroth. It is well settled that a plaintiff may only sue those who are alleged to have been personally involved in the conduct in question. *See, e.g., Farrel v. Burke,* 449 F.3d 470, 484 (2d Cir. 2006) ("It is well settled in [the Second] Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (internal quotations omitted); *Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir. 1986) (A plaintiff in a § 1983 suit must allege "a tangible connection between the acts of the defendant and the injuries suffered").

Nowhere does the Plaintiff plead any facts that would connect Deputy Dyjak or Lieutenant Schroth to his causes of action. As a result, the claims against these Defendants are hereby dismissed with prejudice.

IV. False Arrest and False Imprisonment

"A § 1983 claim for false arrest ... is substantially the same as a claim for false arrest under New York law." *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir. 1996). Under New York law, an action for false arrest requires that the plaintiff show that "1) the defendant intended to confine him, 2) the plaintiff was conscious of the confinement, 3) the plaintiff did not consent to the confinement and 4) the confinement was not otherwise privileged." *Broughton v. State of New York,* 37 N.Y.2d 451, 456 (1975).

"Probable cause is a complete defense to an action for false arrest brought under New York law or § 1983." *Ackerson v. City of White Plains,* 702 F.3d 15, 19 (2d Cir. 2012) (quotation omitted). "Probable cause to arrest exists when the officers have ... reasonably trustworthy information as to [ ] facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been ... committed by the person to be arrested." *Zellner v. Summerlin,* 494 F.3d 344, 368 (2d Cir. 2007). "In deciding whether probable cause existed for an arrest, [courts] assess whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest." *Ackerson,* 702 F.3d at 19, quoting, *Jaegly v. Couch,* 439 F.3d 149, 153 (2d Cir. 2006).

Here, the Plaintiff was taken into custody under New York State's Mental Hygiene Law ("MHL"). Much like the standard for an actual arrest, "[t]he Fourth Amendment requires an official seizing and detaining a person for a psychiatric evaluation to have probable cause to believe that the person is dangerous to himself or others." *Hoffman v. County of Delaware,* 41 F. Supp. 2d 195, 209 (N.D.N.Y. 1999) (internal citation and quotation marks omitted); *see also Glass v. Mayas,* 984 F.2d 55, 58 (2d Cir. 1993). "[A] showing of probable cause in the mental health seizure context requires only a 'probability or substantial' chance of dangerous behavior, not an actual showing of such behavior." *Hoffman,* 41 F. Supp. 2d at 209.

The undisputed facts in this case clearly demonstrate that Deputy Klein was justified in taking the Plaintiff into custody under the MHL. After being called to the Plaintiff's house for a report of neighbor troubles, Klein encountered the Plaintiff. During this encounter, the Plaintiff displayed paranoid tendencies and bizarre behavior, and made statements about poisoning his neighbors children with cyanide. Based upon these acts, the Plaintiff was taken by the Monroe County Sheriff's Office to Strong Memorial Hospital under the provisions of the MHL. At the

hospital, the Plaintiff had a mental health evaluation, and was held by the hospital for four days. Upon his release, the Plaintiff was diagnosed with psychosis.

These facts were sufficient for Deputy Klein to determine that there was a "probability or substantial chance of dangerous behavior," and Klein's act of taking the Plaintiff into custody under the MHL was justified. As such, Klein is entitled to summary judgment on this claim, and the causes of action for false arrest and false imprisonment are dismissed with prejudice.

V.     Fourth Amendment Search and Seizure

It is well settled that "the Fourth Amendment protects individuals from unreasonable searches and seizures." *Anthony v. City of New York*, 339 F.3d 129, 137 (2003). At the same time, an involuntary civil commitment – such as under the MHL – based upon probable cause does not violate the Fourth Amendment. *Fisk v. Letterman*, 501 F. Supp. 2d 505, 526 (S.D.N.Y. 2007). Having previously determined that the Plaintiff was properly taken into custody under the MHL based upon probable cause, any Fourth Amendment claim based upon the seizure of the Plaintiff's person fails.

Reading Plaintiff's Complaint liberally, he could be alleging a Fourth Amendment violation based upon a deputy's entry into his home, and the subsequent seizure of a shotgun from the residence. However, under the facts of this case, the claim also fails. First, the Plaintiff does not allege which individual allegedly took these actions, and as discussed previously, personal involvement is a prerequisite to any finding of liability. On that basis alone, his claim cannot succeed. Nevertheless, even if the Plaintiff had named the individual who allegedly violated his rights, the claim fairs no better when judged on the merits.

It is well settled that the Fourth Amendment only proscribes *unreasonable* searches and seizures. *See, e.g., Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 619 (1989). The uncontroverted facts in this case establish that the Plaintiff escorted Deputy Dyjak to his

- 10 -

bedroom, showed him a shotgun, and then voluntarily surrendered the shotgun to the Deputy. Although Deputy Dyjak has already been dismissed from this lawsuit, to the extent that he were still named in this cause of action, he would be entitled to summary judgment. Consent is a well-established exception to the requirements of the Fourth Amendment, and because the Plaintiff consented to the Deputies' entry into his home and the seizure of the shotgun, he cannot succeed on this claim. Therefore, the cause of action alleging unlawful search and seizure is dismissed with prejudice.

VI.   *Miranda* Rights

Read broadly, Kusak's Complaint alleges that he was not read his *Miranda* rights at the time he was taken into custody. The Supreme Court has not established a civil cause of action for *Miranda* violations pursuant to the Fifth Amendment, instead finding that Fifth Amendment violations occur at trial. *See Chavez v. Martinez,* 538 U.S. 760, 767 (2003) (plurality opinion) ("The privilege against self-incrimination guaranteed by the Fifth Amendment is a fundamental trial right of criminal defendants ... a constitutional violation occurs only at trial." (quoting *United States v. Verdugo–Urquidez,* 494 U.S. 259, 264 (1990)). The *Chavez* decision reinforces the Second Circuit's prior determination that "the remedy for a violation of the right against self-incrimination is the exclusion from evidence of any ensuing self-incriminating statements and not a § 1983 action." *Deshawn E. by Charlotte E. v. Safir,* 156 F.3d 340, 346 (2d Cir. 1998) (quotation omitted).

Even assuming that the Plaintiff's allegation is true – that Deputy Klein failed to read him his Miranda warnings – this does not create a civil cause of action. Therefore, Klein is entitled to summary judgment on this claim, and the *Miranda* cause of action is dismissed with prejudice.

VII.     <u>Slander</u>

Finally, to the extent that the Plaintiff's Complaint purports to contain an allegation of slander against Deputy Klein, this cause of action also fails. The only potential statement that could comprise this cause of action is listed on page seven of the Complaint, and the Plaintiff alleges that this statement was "locker room talk" at the Sheriff's office substation. Of course, such hearsay is not admissible, and as such, I need not address this claim any further. Plaintiff's cause of action for slander is dismissed with prejudice.

## CONCLUSION

Defendants' Motion for Summary Judgment (Dkt. # 53) is GRANTED and this action is dismissed with prejudice. The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Any request to proceed *in forma pauperis* on appeal should be directed by motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure. The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated:   February 6, 2015
         Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge